JOSEPH P. RUSSONIELLO (CSBN 44332)
United States Attorney
THOMAS MOORE (ASB 4305-O78T)
Assistant United States Attorney
Chief, Tax Division
  9th Floor Federal Building
  450 Golden Gate Avenue, Box 36055
  San Francisco, California 94102
  Telephone: (415) 436-7017
  Fax: (415) 436-6748

Attorneys for United States of America

IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNTIED STATES OF AMERICA and SARA BENTLEY, Revenue Officer,<br><br>    Petitioners,<br><br>    v.<br><br>BETTY J. EBY,<br><br>    Respondent. | No. C-06-2844-MJJ |

**PETITIONERS' OPPOSITION TO RESPONDENT'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

**PAGE**

QUESTION PRESENTED .................................................... 1

STATEMENT .................................................................. 1

ARGUMENT .................................................................. 3

THIS MATTER SHOULD NOT BE DISMISSED ........................... 3

    A.    The Power of Contempt to Enforce Orders ........................ 3

    B.    Distinction Between Civil and Criminal Contempt. .................. 3

    C.    Respondent's Conduct Warrants a Finding of Continued Civil Contempt. ....... 3

    D.    Respondent Is Precluded By Res Judicata And Waiver From Raising, For The First Time In The Contempt Purjugation Proceeding, Her Claim Of The Fifth Amendment Privilege Against Self-Incrimination With Respect To The Summoned Testimony And Documents .................................. 4

    E.    Respondent Had Ample Opportunity To Raise Her Claim Of Privilege Against Self-Incrimination At The Contempt Proceedings ........................ 6

    F.    Respondent Failed To Show That She Faces "Substantial And Real Hazards Of Self-Incrimination" ........................................................ 9

    G.    Respondent Waived Her Claim Of Privilege Regarding Her 1996-2007 Tax Years By Providing Information Regarding That Income Prior To The Contempt Proceeding ........................................................ 11

CONCLUSION ................................................................ 12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF POINTS AND AUTHORITIES

**CASES**                                                                 **PAGE**

In re Crystal Palace Gambling Hall, Inc.,
    817 F.2d 1361 (9th Cir. 1987) .................................................. 3

Edwards v. Commissioner,
    680 F.2d 1268 (9th Cir. 1982) .................................................. 9

Glover v. Johnson,
    934 F.2d 703 (6th Cir. 1991) .................................................. 4

Hankins v. Civiletti,
    614 F.2d 953 (5th Cir. 1980) .................................................. 11

Henkel v. Bradshaw,
    483 F.2d 1386 (9th Cir. 1973) .................................................. 3

Hoffman v. United States,
    341 U.S. 479 (1951) .................................................. 10

Kremer v. Chemical Construction Corp.,
    456 U.S. 461 (1982) .................................................. 7

Maggio v. Zeitz,
    333 U.S. 56 (1948) .................................................. 5, 7

McPhaul v. United States,
    364 U.S. 372 (1960) .................................................. 4

Millstone Enterprises,
    864 F.2d at 23 .................................................. 6

In re Morganroth,
    718 F.2d at 164 .................................................. 9, 10

NLRB v. Trans Ocean Export Packing, Inc.,
    473 F.2d 612 (9th Cir. 1973) .................................................. 3, 4

Olson v. United States,
    872 F.2d 820 (8th Cir. 1989) .................................................. 5

Peppers v. Barry,
    873 F.2d 967 (6th Cir. 1989) .................................................. 4

Reisman v. Caplin,
    375 U.S. 440 (1964) .................................................. 4, 5

Rogers v. United States,
    340 U.S. 367 (1951) .................................................. 11

Rogers v. Webster,
    776 F.2d 607 (6th Cir. 1985) .................................................. 10

# TABLE OF POINTS AND AUTHORITIES

**CASES**                                                                                                      **PAGE**

United States v. Allee,
    888 F.2d 208 (1st Cir. 1989) .................................................... 5

United States v. Allshouse,
    622 F.2d 53 (3d Cir. 1980) ..................................................... 11

United States v. Apfelbaum,
    445 U.S. 115 (1980) ........................................................... 9, 10

United States v. Argomaniz,
    925 F.2d 1349 (11th Cir. 1991) ................................................. 6

United States v. Bodwell,
    66 F.3d 1000 (9th Cir. 1995) ................................................... 6

United States v. Brown,
    918 F.2d 82 (9th Cir. 1990) .................................................... 5, 10

United States v. Bryan,
    339 U.S. 323 (1950) ........................................................... 4, 9, 11

United States v. Corbin,
    998 F.2d 1377 (7th Cir. 1993) .................................................. 6

United States v. Drollinger,
    80 F.3d 389 (9th Cir. 1996) .................................................... 7, 8, 9

United States v. Euge,
    444 U.S. 707 (1980) ........................................................... 4

United States v. Hayes,
    722 F.2d 723 (11th Cir. 1984) .................................................. 4, 5

United States v. Kowalik,
    809 F. Supp. 1571 (S.D. Fla. 1992) ............................................ 7

United States v. Powers,
    629 F.2d 619 (9th Cir. 1980) ................................................... 3

United States v. Reis,
    765 F.2d 1094 (11th Cir. 1985) ................................................. 9

United States v. Rylander,
    460 U.S. 752 (1983) ........................................................... 4, 5, 9,

United States v. Rylander,
    656 F.2d 1313 (9th Cir. 1981) .................................................. 3

United States v. Rylander,
    714 F.2d 996 (9th Cir. 1983) ................................................... 3

## TABLE OF POINTS AND AUTHORITIES

**CASES**                                                                                                              **PAGE**

United States v. Schmidt,
    816 F.2d 1477, 1481-1482 (10th Cir. 1987) .................................... 10

United States v. Seetapun,
    750 F.2d 601 (7th Cir. 1984) .................................... 5

United States v. Sorrells,
    877 F.2d 346 (5th Cir. 1989) .................................... 5, 7

United States v. Vallance,
    793 F.2d 1003 (9th Cir. 1986) .................................... 3, 5

United States v. White,
    846 F.2d 678 (11th Cir.) .................................... 11

Venn v. United States,
    400 F.2d 207 (5th Cir. 1968) .................................... 11

```
JOSEPH P. RUSSONIELLO (CSBN 44332)
United States Attorney
THOMAS MOORE (ASB 4305-O78T)
Assistant United States Attorney
Chief, Tax Division
  9th Floor Federal Building
  450 Golden Gate Avenue, Box 36055
  San Francisco, California 94102
  Telephone:  (415) 436-7017
  Fax:        (415) 436-6748
```

Attorneys for United States of America

IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNTIED STATES OF AMERICA and SARA BENTLEY, Revenue Officer,<br><br>Petitioners,<br><br>v.<br><br>BETTY J. EBY,<br><br>Respondent. | No. C-06-2844-MJJ<br><br>PETITIONERS' OPPOSITION TO RESPONDENT'S MOTION TO DISMISS |

Petitioners, the United States of America and Sara Bentley, Revenue Officer, by counsel, file this opposition to respondent's motion to dismiss and request that this Court imprison respondent until she complies with the Order Enforcing Summons.

### QUESTION PRESENTED

Should this matter be dismissed because respondent asserts she has cured her contempt by asserting the Fifth Amendment privilege to not testify or produce the summonsed records.

### STATEMENT

On August 15, 2006, the Court entered an Order Enforcing Summons. The respondent, Betty J. Eby, was ordered by the Court to appear on September 12, 2006, before Revenue Officer Sara Bentley to comply with the IRS summons. On August 17, 2006, the order was served on the respondent who did not appear before the IRS until November 14, 2007 at which time she refused to provide the testimony or produce the documents as ordered. See the November 15,

2007, Declaration of Teresa Ryan at ¶¶ 2-4.

On November 20, 2007, the Court entered its Order To Show Cause Re: Contempt, which set a contempt hearing for January 29, 2008.

The respondent appeared for the hearing on January 29, 2008. On that date, but prior to the matter being called before the Court, government's counsel and Ms. Eby met outside the courtroom and discussed the pending contempt application and the respondent's refusal to comply with the summons. Ms. Eby's advisor, Joe Bannister, accompanied Ms. Eby outside the courtroom, but did not participate in the discussions with government's counsel and instead only watched from a distance. During the course of that meeting the respondent provided the United States with testimony concerning sources and amounts of her income for the 1996- 2007 tax years, the "corporation sole" which she purchase for $1,200, and tax-protestors she knew including Joe Bannister. She informed government's counsel that she brought the summonsed records with her and that they were in the courtroom with her spouse. The respondent agreed with the United States to the entry of a contempt order. See Declaration of Thomas Moore ¶¶ 2-7.

Upon being called to the courtroom by the respondent's spouse, government's counsel, the respondent, and her advisor, Joe Bannister, returned to the courtroom for the hearing. The parties informed the Court of their agreement and provided the proposed Order Finding Respondent In Contempt. The court questioned respondent concerning her desire to enter the proposed order and then entered the contempt order. Declaration of Thomas Moore ¶¶ 8-9.

Subsequently, the respondent met with the IRS to purge herself of contempt. At that meeting, the respondent again brought the summonsed records, but refused to provide the documents or testify asserting the Fifth Amendment Privilege. See Transcript attached to Respondent's Motion to Dismiss.

///
///
///
///

Pet.'s Opp. To Resp.'s Mot. To Dismiss
(No. C-06-2844-MJJ)                                              2

# ARGUMENT

## THIS MATTER SHOULD NOT BE DISMISSED

### A. The Power of Contempt to Enforce Orders

Failure to obey a specific definite court order is grounds for contempt. <u>In re Crystal Palace Gambling Hall, Inc.</u>, 817 F.2d 1361, 1365 (9th Cir. 1987). This rule applies to a party's failure to comply with a court order enforcing an IRS summons. <u>United States v. Vallance</u>, 793 F.2d 1003, 1005 (9th Cir. 1986).

### B. Distinction Between Civil and Criminal Contempt.

Because "the same conduct may result in citations for both civil and criminal contempt" the two are distinguished by their purpose. Civil contempt is intended to be coercive or compensatory while the purpose of criminal contempt is punitive. <u>United States v. Rylander</u>, 714 F.2d 996, 1001 (9th Cir. 1983). There is a right to counsel in both civil and criminal contempt hearings because there is the possibility of imprisonment in either. <u>Henkel v. Bradshaw</u>, 483 F.2d 1386, 1388-89 (9th Cir. 1973).

### C. Respondent's Conduct Warrants a Finding of Continued Civil Contempt.

Civil contempt is appropriate as the respondent refuses to comply with the Order Enforcing Summons. In a civil contempt matter, the government meets its initial burden by showing only a failure to comply; "the proof of contempt must be clear and convincing." <u>United States v. Rylander</u>, 656 F. 2d 1313, 1318 (9th Cir. 1981) ("Rylander I"), rev'd on other grounds, 460 U.S. 752 (1983) (Rylander II); <u>United States v. Powers</u>, 629 F. 2d 619, 626 n. 6 (9th Cir. 1980). The burden then shifts to the defendant to come forward and show "categorically and in detail" why she is unable to comply. <u>NLRB v. Trans Ocean Export Packing, Inc.</u>, 473 F. 2d 612, 616 (9th Cir. 1973).

This case arises out of a proceeding wherein the IRS summons was ordered enforced, the respondent refused to comply, the Court entered a contempt show cause order, and then entered an agreed order holding the respondent in contempt. In addition, respondent, prior to being held in contempt, on one occasion met with the government and refused to provide testimony or records, but on a second occasion she provided partial testimony, brought the summonsed

records and did not assert the Fifth Amendment privilege. Thirteen days after being held in contempt for failing to comply with the summons enforcement order, the respondent raised for the first time at a purjugation meeting, the Fifth Amendment privilege as a defense to compliance with the summons.

> D. **Respondent Is Precluded By Res Judicata And Waiver From Raising, For The First Time In The Contempt Purjugation Proceeding, Her Claim Of The Fifth Amendment Privilege Against Self-Incrimination With Respect To The Summoned Testimony And Documents**

Under the circumstances of this case, taxpayer is precluded from raising her Fifth Amendment claim at the contempt purgation proceedings. An individual ordered to respond to a summons or subpoena to produce books and records must either produce the requested documents or present defenses justifying his failure to do so. See **McPhaul v. United States**, 364 U.S. 372, 379 (1960); **United States v. Bryan**, 339 U.S. 323, 330-31 (1950). Such defenses must be asserted at an enforcement proceeding, which affords a judicial determination of any challenges the respondent may wish to make. **Reisman v. Caplin**, 375 U.S. 440, 449 (1964); **United States v. Euge**, 444 U.S. 707, 719 (1980).

The show-cause order places on the alleged contemnor the burden of showing why she should not be held in contempt. **United States v. Rylander**, 460 U.S. 752, 757 (1983). She must present some evidence to explain or justify her failure to produce the requested information. It is not necessary for the petitioner in a contempt proceeding to establish that the respondent has the capacity to comply. **Rylander**, 460 U.S. at 757; **NLRB v. Trans Ocean Export Packing Co., Inc.**, 473 F.2d 612, 616 (9th Cir. 1973). Rather, the burden is on the respondent to show "categorically and in detail" why she is unable to comply. **United States v. Hayes**, 722 F.2d 723, 725 (11th Cir. 1984); see also **McPhaul**, 364 U.S. at 379. Further, to avoid contempt, a respondent must show that she has taken "all reasonable steps within [his] power to comply with the court's order." **Peppers v. Barry**, 873 F.2d 967, 969 (6th Cir. 1989); see also **Glover v. Johnson**, 934 F.2d 703, 708 (6th Cir. 1991).

Respondent argues she is protected by the Fifth Amendment from compelled production of her testimony and documents. However, although respondent had full notice of what was

required of her, and resisted enforcement of the summons on other grounds (See Ryan Declaration at ¶4), she did not raise her Fifth Amendment claim either in response to the summons, during the summons enforcement proceeding, or the contempt proceeding. Instead, she introduced this claim thirteen days after the conclusion of the contempt proceeding. See Transcript of Summons Appointment dated February 11, 2008 attached to the respondent's motion to dismiss. By failing to raise the claim in the enforcement or contempt proceedings, taxpayer has waived the claim, and is barred by res judicata from using it as a defense in the contempt proceeding.

Thus, the only question properly before the court at this stage is whether the taxpayer has the present ability to obey the court's enforcement order. **Rylander**, 460 U.S. at 757; **United States v. Sorrells**, 877 F.2d 346, 348-49 (5th Cir. 1989);. Any questions regarding the propriety of the original summons and whether it should have been enforced must have been raised at either the enforcement or contempt hearings. **Rylander**, 460 U.S. at 757. "[The] contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy." **Maggio v. Zeitz**, 333 U.S. 56, 69 (1948). This is because the summons enforcement and contempt orders are final and appealable. **Reisman**, 375 U.S. at 449; **United States v. Vallance**, 793 F.2d 1003, 1005 (9th Cir. 1986). As such, it was binding on taxpayer, and all issues that were raised or could have been raised in those hearing are res judicata and can not be raised anew in the contempt purjugation hearing. See **Rylander**, 460 U.S. at 757; **United States v. Brown**, 918 F.2d 82, 93 (9th Cir. 1990); **United States v. Allee**, 888 F.2d 208, 211, 212-23 (1st Cir. 1989); **Olson v. United States**, 872 F.2d 820, 822 (8th Cir. 1989).

In the contempt proceeding, taxpayer did not show that she had made all reasonable efforts to comply with the summons, as she was required to do to avoid contempt. **United States v. Seetapun**, 750 F.2d 601, 605-06 (7th Cir. 1984); **Hayes**, 722 F.2d at 725-26. Instead, its was not until after the court entered the agreed upon contempt order and at the purgation meeting that she argued that the Fifth Amendment privilege against self-incrimination absolved her from compliance, an argument that she had waived by failing to raise it in response to the summons, at

1    the summons enforcement show cause hearing or at the contempt show cause hearing.

2          E.    **Respondent Had Ample Opportunity To Raise Her Claim Of Privilege Against Self-Incrimination At The Contempt Proceedings**

4    The summons enforcement proceeding and the contempt proceeding provided taxpayer
5    ample opportunities to raise her claim of privilege. The summons informed taxpayer of the
6    nature of the testimony and documents sought, and taxpayer was given repeated opportunities to
7    appear and show how providing that information would risk incriminating her. Having failed to
8    avail herself of these opportunities to assert a claim of privilege, taxpayer waived that defense.
9    Accordingly, she should be allowed to raise it in the contempt purgation proceeding.

10    The privilege against self-incrimination is not self-executing but must be affirmatively
11    invoked as a defense on a document-by-document and question-by-question basis. See **United**
12    **States v. Corbin**, 998 F.2d 1377, 1390 (7th Cir. 1993), cert. denied, 114 S. Ct. 1124 (1994);
13    **United States v. Argomaniz**, 925 F.2d 1349, 1355 (11th Cir. 1991); **United States v. Bodwell**,
14    66 F.3d 1000, 1001 (9th Cir. 1995). The summons personally served on taxpayer put her on
15    notice as to the specific nature of the information sought.

16    Respondent failed to assert her claim of privilege under the Fifth Amendment as a
17    defense to compelled production of the required information at any previous court hearing or
18    meetings with government officials. At no time from when she was served with the summons,
19    until the after the court's contempt order, did respondent raise a claim of privilege against
20    compelled testimony or production of the information sought.

21    By not raising her claim of privilege along with her other defenses before the government
22    officials at her first IRS meeting or her first meeting with the government's counsel prior to the
23    contempt hearing, respondent waived this claim and, accordingly, she is barred by the doctrine of
24    res judicata from raising, for the first time in the contempt purgation proceeding, her Fifth
25    Amendment claims with respect to those items. See **United States v. Bodwell**, 66 F.3d 1000,
26    1001 (9th Cir. 1995) (whether taxpayer should be precluded from raising Fifth Amendment claim
27    in contempt proceeding turns on whether this claim "could have been properly litigated in the
28    enforcement proceedings"); **Millstone Enterprises**, 864 F.2d at 23 ("'Under res judicata, a final

Pet.'s Opp. To Resp.'s Mot. To Dismiss
(No. C-06-2844-MJJ)           6

judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action,'" quoting **Kremer v. Chemical Constr. Corp.**, 456 U.S. 461, 467 n.6 (1982)); **Sorrells**, 877 F.2d at 352 n.8 ("This is a simple application of the rule that defenses to production that are available at the time of the enforcement proceeding cannot be raised for the first time in a contempt proceeding"); **United States v. Kowalik**, 809 F. Supp. 1571, 1577-80 (S.D. Fla. 1992) (taxpayers could not, for the first time at the contempt stage, raise Fifth Amendment claims as a defense), aff'd, 12 F.3d 218 (11th Cir. 1993). As the Supreme Court explained,

> [i]t would be a disservice to the law if we were to depart from the long-standing rule that a contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy. The procedure to enforce the court's order commanding or forbidding an act should not be so inconclusive as to foster experimentation with disobedience. Every precaution should be taken that orders issue . . . only after legal grounds are shown and only when it appears that obedience is within the power of the party being coerced by the order. But when it has become final, disobedience cannot be justified by retrying the issues as to whether the order should have issued in the first place.

**Maggio**, 333 U.S. at 69.

Unlike respondent in this case, the taxpayer in **Bodwell** never had an opportunity to answer the government questions before or during the summons enforcement proceedings. Here, the respondent was given the opportunity to raise the privilege prior to the contempt hearing and even at the contempt hearing, but she did not. The respondent could have raised and properly litigated her Fifth Amendment claims in response to government's counsel's questions prior to the contempt proceedings or at the contempt proceeding but failed to do so and instead answered the governments questions concerning her income and even agreed to the contempt order. Accordingly, the respondent had the opportunity properly to raise her Fifth Amendment privilege question-by-question at the contempt proceeding and therefore should not be permitted to do so in the contempt purgation proceeding.

Nor is this case similar to **United States v. Drollinger**, 80 F.3d 389 (9th Cir. 1996), in which the taxpayer was incarcerated for contempt, having made a blanket assertion of his Fifth-

Amendment privilege in response to an IRS summons. After Drollinger was incarceratted, his counsel informed the court that Drollinger "might wish to raise the privilege with respect to specific questions when such questions were asked." 80 F.3d at 391. Drollinger then met with IRS officers and was asked specific questions. Drollinger answered some of the questions but invoked the Fifth Amendment as to the others on a question-by-question basis. He also produced some, but not all, of the documents requested; he did not invoke the Fifth Amendment as to any documents. The district court released him on bond, but ordered him to appear again before the IRS to give additional testimony and produce additional documents. Appearing with counsel, Drollinger declined to answer most questions on self-incrimination grounds; he produced no additional documents, saying he "couldn't find any." Ibid. Petitioning the district court for an order purging him of contempt, Drollinger said he had no additional documents and that an in camera hearing should be held regarding his claim of self-incrimination. Drollinger indicated that he would continue to assert the Fifth Amendment, and the district court remanded him to custody for civil contempt.

On appeal, the Ninth Circuit reversed the renewed order of contempt. Stating that the Fifth Amendment must be asserted on a question-by-question basis, the Ninth Circuit noted that, while Drollinger had failed to appear in the enforcement proceeding or the initial contempt proceedings, he had not precluded the IRS agents from asking specific questions "by making a repeated or unequivocal blanket refusal to answer any question." 80 F.3d at 393, n.5. Instead, Drollinger "appeared at the compliance meeting as ordered, with documents, and showed a willingness to answer questions that would not subject him to self-incrimination." Ibid. Because Drollinger had not had an earlier opportunity to answer specific questions, the Ninth Circuit held that he was entitled to raise and litigate his Fifth Amendment claim when those questions were finally asked during the purgation proceedings. Ibid. The Ninth Circuit therefore remanded to permit the district court to conduct an in camera hearing regarding the validity of Drollinger's Fifth Amendment objections to each specific question posed by the IRS. As to Drollinger's failure to produce documents, the Ninth Circuit noted that the taxpayer bore the burden of producing evidence of his present inability to turn over the documents that the IRS still sought.

1  80 F.3d at 393. As the district court had made no finding regarding Drollinger's ability to turn
2  over the documents, the Ninth Circuit remanded for the district court to determine, based on any
3  evidence the parties might present, whether Drollinger had purged himself of contempt with
4  respect to documents. 80 F.3d at 394.

Here, unlike in **Drollinger,** respondent did not assert her Fifth Amendment privilege or refuse turn over documents or to answer government counsel's questions at the pre-contempt hearing meeting. Instead, she answered questions, provided information and made the records available for review, until she and government's counsel were called into the courtroom for the contempt hearing. At the contempt hearing respondent agreed to be held in contempt and did not assert the Fifth Amendment Privilege as she might have. Because respondent had an earlier opportunity to answer specific questions prior to being held in contempt, she is not entitled to raise and now litigate her Fifth Amendment privilege during purgation proceedings.

The contempt order entered in this case was not appealed and became final. By attempting to relitigate questions that she could have raised in the earlier summons enforcement or contempt proceedings, respondent seeks to achieve the twin evils the Supreme Court identified in **Rylander**: (1) the undue multiplication of proceedings and (2) the risk that the judicial and legislative prerogative of testimonial compulsion will be rendered a nullity. 460 U.S. at 762 (quoting **Bryan,** 393 U.S. at 331). Having failed to raise the defense of her Fifth Amendment privilege against self-incrimination in response to the summons, the order to enforce the summons, or the contempt show cause order, respondent is barred from raising it during the contempt purgation stage of this matter.

F.  **Respondent Failed To Show That She Faces "Substantial And Real Hazards Of Self-Incrimination"**

If the summoned party lacks any "substantial and real hazards of self-incrimination," the privilege against self-incrimination is simply not a defense to compliance with the IRS summons at all. **United States v. Apfelbaum,** 445 U.S. 115, 128 (1980); **United States v. Reis**, 765 F.2d 1094, 1096 (11th Cir. 1985); **In re Morganroth**, 718 F.2d at 164; **Edwards v. Commissioner**, 680 F.2d 1268, 1270 (9th Cir. 1982). There must be reasonable cause to apprehend danger of

incrimination: the party claiming the privilege is "not exonerated from answering merely because he declares that in so doing he would incriminate himself." **Hoffman v. United States**, 341 U.S. 479, 486 (1951). Thus, the standard for determining when the privilege may be invoked is "whether the claimant is confronted by substantial and 'real,' and not merely trifling or imaginary, hazards of incrimination." **Apfelbaum**, 445 U.S. at 128. See also **In re Morganroth**, 718 F.2d at 167.

It is well established that the Fifth Amendment privilege "not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." **Hoffman**, 341 U.S. at 486. See also **In re Morganroth**, 718 F.2d at 164. The Supreme Court limited this statement, however:

> this protection [Fifth Amendment] must be confined to instances where the witness has reasonable cause to apprehend danger from a direct answer. . . . The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself--his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified, . . . and to require him to answer if "it clearly appears to the court that he is mistaken."

**Hoffman**, 341 U.S. at 486 (citations omitted). See also **Morganroth**, 718 F.2d at 167; **Rogers v. Webster**, 776 F.2d 607, 611 (6th Cir. 1985).

The IRS summons at issue here was served upon taxpayer for the purpose of investigating her civil tax liabilities. See Verified Petition at ¶ 4. Accordingly, the prospect of criminal investigation is purely speculative. Respondent expresses no basis for fearing incrimination. Respondent simply refuses to provide further testimony or produce records as they could be potentially incriminating and thus the Fifth Amendment privilege should be sustained without further inquiry by this court. Respondent has not asserted that she has any specific basis to fear incrimination, nor has she advanced any evidence or explanation indicating how the production of the summoned documents and records would incriminate her. Under these circumstances, courts have rejected an assertion of the Fifth Amendment privilege as a defense to enforcement of an IRS summons. See, e.g., **Brown**, 918 F.2d at 84 (taxpayer failed to make any showing that the summoned information met the **Hoffman** standards); **United States v. Schmidt**, 816 F.2d

Pet.'s Opp. To Resp.'s Mot. To Dismiss
(No. C-06-2844-MJJ)                                10

1477, 1481-1482 (10th Cir. 1987)(generalized fear of criminal prosecution insufficient to support claim of Fifth Amendment privilege); **United States v. Allshouse**, 622 F.2d 53, 56 (3d Cir. 1980)("a taxpayer normally may not make a blanket claim to the privilege but must assert it as to each question"); **Venn v. United States**, 400 F.2d 207, 210-211 (5th Cir. 1968) ("the mere fact that the evidence obtained through the summons may be later used against the taxpayer in a criminal prosecution is no barrier to enforcement").

Public policy considerations inherent in a system of public revenue collection that necessarily relies on self-reporting require that taxpayer raise her claim of privilege in a timely and specific manner and not, as was done here, as a last-ditch defense against the payment of income taxes. Indeed, the Supreme Court has condemned the very kind of gamesmanship engaged in by taxpayer here:

> Given the oft-stated reliance of the federal income tax system on self-assessment, a plainer guide to the successful frustration of this system could hardly be imagined. As we said in the analogous context in **United States v. Bryan**:
>
> > "A subpoena has never been treated as an invitation to a game of hare and hounds, in which the witness must testify only if cornered at the end of the chase. If that were the case, then indeed, the great power of testimonial compulsion, so necessary to the effective functioning of the courts and legislatures, would be nullity." 339 U.S., at 331.

**Rylander**, 460 U.S. at 762.

### G. Respondent Waived Her Claim Of Privilege Regarding Her 1996-2007 Tax Years By Providing Information Regarding That Income Prior To The Contempt Proceeding

Furthermore, respondent waived any claim of privilege regarding her 1996 to 2007 tax years by providing information and bringing records with respect to her income during those years to the United States prior to contempt hearing. Indeed, taxpayer acknowledged prior to the contempt hearing and at the hearing that she brought the summonsed records for the government to review. Declaration of Thomas Moore at ¶ . Such statements, at the least, waived any Fifth Amendment privilege as to her possession of the records and testimony as to her income for the 1996 to 2007 tax years. See **Rogers v. United States**, 340 U.S. 367, 372-75 (1951); **United States v. White**, 846 F.2d 678, 690 (11th Cir.), cert. denied, 488 U.S. 984 (1988); **Hankins v. Civiletti**, 614 F.2d 953, 955 (5th Cir. 1980). Respondent has thus waived the

1 | defense of the Fifth Amendment and cannot invoke it now.

## CONCLUSION

For the foregoing reasons, the United States of America and Revenue Officer Sara Bentley respectfully request that this Court deny respondent's motion to dismiss and incarcerate Betty Eby for her disobedience of the Order Enforcing Summons.

JOSEPH P. RUSSONIELLO
United States Attorney

THOMAS MOORE
Assistant United States Attorney
Chief, Tax Division

Pet.'s Opp. To Resp.'s Mot. To Dismiss
(No. C-06-2844-MJJ)                12

**CERTIFICATE OF SERVICE**

I, **KATHY TAT** declare:

That I am a citizen of the United States of America and employed in San Francisco County, California; that my business address is Office of United States Attorney, 450 Golden Gate Avenue, Box 36055, San Francisco, California 94102; that I am over the age of eighteen years, and am not a party to the above-entitled action.

I am employed by the United States Attorney for the Northern District of California and discretion to be competent to serve papers. The undersigned further certifies that I caused a copy of the following:

**DECLARATION OF THOMAS MOORE IN OPPOSITION TO RESPONDENT'S MOTION TO DISMISS and PETITIONERS' OPPOSITION TO RESPONDENT'S MOTION TO DISMISS**

to be served this date upon the party(ies) in this action by placing a true copy thereof in a sealed envelope, and served as follows:

_X_    **FIRST CLASS MAIL** by placing such envelope(s) with postage thereon fully prepaid in the designated area for outgoing U.S. mail in accordance with this office's practice.

____    **PERSONAL SERVICE (BY MESSENGER/HAND DELIVERED)**

____    **FACSIMILE (FAX)** No.: _____

to the parties addressed as follows:

BETTY EBY
4724 TERRACE AVENUE
LAKEPORT, CA 95453

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on **March 13, 2008** at San Francisco, California.

**KATHY TAT**
Legal Assistant