## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF CALIFORNIA

FILED

08 MAR 27 AM II: 34

|                           |   |                          |
|---------------------------|---|--------------------------|
| UNITED STATES OF AMERICA  | ) | RICHARD W. WIEKING       |
|                           | ) | CLERK, U.S. DISTRICT COURT |
| Petitioner,               | ) | NORTHERN DISTRICT OF CALIFORNIA |
|                           | ) |                          |
| -vs-                      | ) |                          |
|                           | ) |                          |
| BETTY J. EBY,             | ) |                          |
|                           | ) | Case No. **C-06-2844 MJJ** |
| Respondent.               | ) |                          |
|                           | ) |                          |

## REPLY—RESPONDENT'S MOTION TO DISMISS ORDER FINDING
## RESPONDENT IN CONTEMPT

IN REPLY to the "PETITIONER'S OPPOSITIN TO RESPONDENT'S MOTION

TO DISMISS," Respondent Betty J. Eby ("Ms. Eby") states as follows:

### None of the case law cited by the Government is relevant to invocation of the
### Fifth Amendment in one's individual capacity.

The Petitioner, "United States of America" (hereinafter, "Government") claims,

> "*Under the circumstances of this case, taxpayer is precluded from raising
> her Fifth Amendment claim at the contempt purgation proceedings. An
> individual ordered to respond to a summons or subpoena to produce
> books and records must either produce the requested documents or
> present defenses justifying his failure to do so. See McPhaul v. United
> States, 364 U.S. 372, 379 (1960); United States V. Bryan, 339 U.S. 323,
> 330-31.*"

In the *Bryan* case (cited immediately above), the defendant, secretary of the Joint

Anti-Fascist Refugee Committee, was indicted for failing to produce records called for in

subpoenas of the House Committee on Un-American Activities. The *McPhaul* court,

citing *Bryan* on this matter pointed out that:

> "*[t]he Fifth Amendment did not excuse petitioner from producing the
> records of the Civil Rights Congress, for it is well established that '[b]
> ooks and records kept in a representative rather than a persona capacity
> cannot be the subject of the personal privilege against self-incrimination,
> even though the papers might tend to incriminate (their keepers)*

*personally*."

Those cases have nothing to do with asserting Fifth Amendment claims in a personal capacity, such as Ms. Eby has done.

*United States v. Rylander*, 460 U.S. 752, *N.L.R.B. v. Trans Ocean Export Packing Co., Inc.*, 473 F.2d 612, *United States v. Hayes*, 722 F.2d 823, and others, are also cases cited by the Government, all involving the *inability* of a defendant to comply with a court order to produce records. To the extent that these cases even mention Fifth Amendment, these courts only explain that the Fifth Amendment was inapplicable to the records of artificial entities. Ms. Eby need not make any showing that she made a good faith effort to produce records of which she is a custodian, because the only records the IRS has sought are Ms. Eby's *personal* records.

The subject of the Fifth Amendment never came up in any proceedings in this Court; and the necessity of raising Fifth Amendment claims never arose; therefore the doctrine of *res judicata* cannot come into play. Moreover, in *N.L.R.B.* supra, a case cited by Respondent, the United States Supreme Court stated:

> "*While respondents do not make the point, the law is settled that the privilege against self-incrimination can be claimed in any proceeding, whether criminal or civil, administrative or judicial, investigatory or adjudicatory. In re Gault, 387 U.S. 1, 47-48.*

Consequently, if the government's contends, "... *the only question properly before the court at this stage is whether the taxpayer has the present ability to obey the court's enforcement order,*" then there is no question properly before this court by the government, for the only real question is whether Ms. Eby complied Court's ORDER, which Ms. Eby has shown. She merely chose to invoke Fifth Amendment protections, on a item-by-item basis; and in this country, that is still allowed.

### Ms. Eby never waived her Fifth Amendment protections.

The most specious argument of the government is that Ms. Eby has somehow

waived her Fifth Amendment rights, because, in essence, she did not raise Fifth

Amendment claims at the contempt proceedings.

Once it is acknowledged that at no time, did Ms. Eby ever waive her Fifth

Amendment right to not be a witness against herself, the Government's argument

collapses like a house of cards. Not only did Ms. Eby never waive any of her rights, this

Court's ORDER never said anything about ordering Ms. Eby to waive any of her rights.

Besides, it is a matter of hornbook law that:

> "Our decisions establish beyond dispute the breadth of the privilege to
> refuse to respond to questions when the result may be self-incriminatory
> and the need fully to implement its guaranty. See <u>Spevack v. Klein, 385
> U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967)</u>; <u>Counselman v. Hitchcock,
> 142 U.S. 547, 585-586, 12 S.Ct. 195, 206-207, 35 L.Ed. 1110 (1892)</u>;
> <u>Albertson v. SACB, 382 U.S. 70, 80, 86 S.Ct. 194, 199, 15 L.Ed.2d 165
> (1965)</u>. * * * The privilege may be waived in appropriate circumstances if
> the waiver is knowingly and voluntarily made. Answers may be compelled
> regardless of the privilege if there is immunity from federal and state use
> of the compelled testimony or its fruits in connection with a criminal
> prosecution against the person testifying. <u>Counselman v. Hitchcock, supra,
> 142 U.S. at 585-586, 12 S.Ct. at 206-207; Murphy v. Waterfront
> Commission, supra, 378 U.S. at 79, 84 S.Ct. at 1609</u>."
> **Gardner v. Broderick,** 392 U.S. 273 (1968)

Ms. Eby never waived her right; and Ms. Eby was never offered immunity so as to

compel her to waive her right,

The Government generally states that Ms. Eby was in contempt of this court's

order, asserting, for instance, on page 6:

> *"The respondent could have raised and properly litigated her Fifth
> Amendment claims in response to government's counsel's questions prior
> to the contempt proceedings or the contempt proceedings but failed to do
> so and instead answered the government's questions concerning her
> income and even agreed to the contempt order. Accordingly, the
> respondent had the opportunity properly to raise her Fifth Amendment*

*privilege question-by-question at the contempt proceedings and therefore should not be permitted to do so in the contempt purgation proceedings."*

However, this argument fails because the IRS (previous to the February 11th meeting) always terminated the meeting after the very first question, which was, "*Did you bring your records.*" Logic dictates that Ms. Eby cannot invoke the Fifth Amendment to a question or a request for a particular document, until she is first asked a particular question, or asked to produce a particular document (or kind of document). Ms. Eby, on February 11th, has since answered that one and only question previously asked of her— that she did indeed bring her records; and has answered all of the subsequent questions and requests for production of documents, in keeping with the law. And properly invoking a Fifth Amendment claim qualifies as an answer to a question or request. As such, is fully compliant with this Court's Order, and should therefore be fully absolved of contempt of the Court's Order.

Probably the most crucial factual error upon which the Government relies, is that Ms. Eby, in some fashion, promised this Court that she would turn over all her documents, to the extent that they exist; and in doing so, therefore waives her Fifth Amendment right to not be a witness against herself. Ms. Eby did no such thing.

In one case the government relies upon, *U.S. v. Sorrells,* 877 F.2d 346 (1987), the court stated:

> *In signing the Agreed Order Compelling Production, Sorrells did not even raise, much less prove, the defense that he lacked possession or control of the documents sought by the IRS. Sorrells nonetheless argues that the presumption of possession and control should not apply in this case because his acquiescence in the enforcement order was made without the benefit of legal advice and without knowledge of its legal consequences.*
> *We find no merit in this argument. The record indicates that Sorrells and the person Sorrells held out as his counsel carefully reviewed the order before Sorrells signed it, and then only after the government's*

*counsel explained the consequences of signing the order. The order implicitly acknowledges the existence of the documents and Sorrells's possession of them; if the documents did not exist or were not then in Sorrells's possession, we find it difficult to believe that Sorrells would have voluntarily signed an order that specifically stated that a writ of bodily attachment would be forthcoming if he failed to produce the documents. \* \* \* **In this case, Sorrells, far from maintaining that he did not possess the documents requested by the summons, actually agreed to produce them.** If the presumption obtains with the mere issuance of an enforcement order on the basis of the "implied finding" that a defense of lack of possession has not been proven, it most certainly applies when the* **defendant voluntarily signs an order agreeing to produce the documents.**
[Emphasis added]

Ms. Eby never signed any document promising to turn over documents, and even if she did, it cannot be said that she was informed of the implications of any such promise. While Sorrels should have known by the implicit language of the court's order, which he agreed to, there is no such implicit language in the Court's Order that she agreed to waive her Fifth Amendment claims. Indeed, Ms. Eby has not "played fast and loose" with this court, as did Sorrels, promising that he would produce documents, which he later claimed he didn't have.

However, it appears Mr. Moore, government attorney and declarant, is playing fast and loose with *this* court. It appears the only allegation that Ms. Eby agreed to turn over her documents, and concomitantly waiving her Fifth Amendment protections, is to be found in Mr. Moore's Declaration. This is the occasion where Mr. Moore, isolated and cornered Ms. Eby in the hallway outside the courtroom before the hearing started, to badger and berate her. See "Affidavit of Betty Eby in Support of Respondent's Motion to Dismiss Order Finding Respondent in Contempt," incorporated herewith by reference thereto.

Mr. Moore was correct that Ms. Eby brought the summonsed records to court

with her. However, the only reason Ms. Eby brought the documents to court, was because the Court ordered her to do so—not because she had any intention of just turning over all of her documents to Mr. Moore or the Petitioners thus abandoning her Fifth Amendment claims. Even more surprising is that Mr. Moore claims not only that Ms. Eby promised to turn over all her documents, but that she (allegedly) did so in the hallway without any witnesses to this alleged promise.  This Court should note that there would have been a witness to this "promise, Ms. Eby's assistant, a former IRS agent; but Mr. Moore demanded her assistant stand down the hallway where he could not hear Moore's and Eby's exchange. Amazingly, Mr. Moore seems to believe this "promise" rises to an abandonment of her Fifth Amendment claims, the Court's ORDER compels her to turn over the documents without recourse to Fifth Amendment claims—and no such language appears in the Court's ORDER—and the doctrine of *res judicata* now applies. That is incredible.

Assuming, *in arguendo*, Ms. Eby did make a promise to Moore in a courthouse corridor—without any witnesses, no less—to turn over her documents thereby abandoning her Fifth Amendment protections: that does not rise to a binding statement made by Eby in the courtroom, when the hearing took place. There is no record of it. Perhaps a witness to Mr. Moore's claim would have been helpful, but Mr. Moore demanded that Mr. Bannister Ms. Eby's assistant (a former IRS agent) stand down the corridor outside of hearing range.  That he made such a demand of Banister raises questions as to the veracity of Moore's allegation.

### Ms. Eby has the right to invoke her Fifth Amendment protections, just so long as they are particularized.

The way Petitioner portrays Fifth Amendment claims are not applicable to this

case, if they are accurate, in the first instance. The question is not if testimony *will* be used against someone; the question is, *can* the testimony be used against the individual. It is clear that Eby has the right not to be compelled to testify in a matter concerning only herself, nor to produce her personal books, records, or other documents for inspection by the government. Nevertheless, the Government would have this Court require Eby to show that there is a "real danger of incrimination" in order to shield any particular testimony or document from disclosure. Notably, however, Government never claims that the information it seek to compel Eby to produce cannot be used against her, nor even that it *will* not be used, in any future criminal trial. And, of course, the Government cannot truthfully make such a claim, because it knows, just like this Court knows, that *anything* and *everything* that Ms. Eby discloses to the Government can and will be used against her in any future criminal actions instituted by the Respondents.

The bottom line remains, though. Regardless of whether or not any particular item of information sought by the IRS is incriminating, Ms Eby cannot be compelled to provide it. Neither the production of his personal books and records, nor her testimony, can be compelled consistent with the 5th Amendment. It is illogical to suggest that a criminal defendant can be compelled to take the stand (thereby becoming a witness) before he can assert his 5th Amendment right not to be a witness. Likewise, Ms. Eby cannot be compelled to testify as a witness just so that she might assert her right not to be so compelled. The case law that suggests otherwise is derived from situations where the person's right not to be compelled to be a witness did not apply—that is, situations where they were compelled to be a witness against some other person. The practice of ordering citizens to testify and produce documents to the IRS is Constitutionally invalid, and can

never become valid merely by repeating the error.

Wherefore, this court should find that Ms. Eby has an inalienable right not to be a witness against herself, and refuse to enforce the Plaintiff's administrative summons. In the event that this court does not do so, it should uphold the provisions of the 4th and 5th Amendments of the United States Constitution consistent with the spirit and intent of the Framers, by acknowledging that Defendant has a right against self-incrimination, which encompasses at least the right to refuse, on a question-by-question or document-by-document basis, to give any testimony, or to authenticate any documents in his possession, which could be used against him in any future criminal prosecution.

As the transcript of the hearing attached to Ms. Eby's motion to dismiss the contempt order shows, she made no blanket claims to her Fifth Amendment rights. Ms. Eby may invoke the Fifth Amendment as argued in her motion to dismiss.

### Purgation.

Ms. Eby should be purged of the fines imposed by the contempt order, because she has fully complied with the IRS summons. Contrary to what the Government would have this court believe, there were certain relevant similarities between this case and *United States v. Drollinger*, 80 F.2d 389 (9th Cir. 1996). Because Drollinger had not had an earlier opportunity to answer opportunity to answer specific questions, the Ninth Circuit held that he was entitled to raise and litigate his Fifth Amendment claims when those questions were asked during the purgation proceedings. And Ms. Eby had the right to not provide testimony against herself by authenticating documents by producing them to the Government. Ms. Eby never had an earlier opportunity to raise Fifth Amendment claims previous to the IRS meeting of February 11, 2008, and is therefore not in

contempt of this Court's ORDER.

WHEREFORE, Respondent prays that this Court:

(1) FIND that Betty Eby was in full compliance with the Court's ORDER that she fully

with the IRS administrative summons;

(2) that, having complied with the Court's ORDER enforcing said summons, the $500.00

per day fine for failure to comply with the Order Enforcing Summons be purged;

and,

(3) that the Court's ORDER FINDING RESPONDENT IN CONTEMPT be dismissed in

its entirety.

Respectfully submitted this 26th day of March, 2008.

Betty J. Eby, Respondent *pro se*
4724 Terrace Ave.
Lakeport, California 95453

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of _Lake_

On _March 26, 2018_ before me, D.S. LEY, Notary Public, personally
   DATE

appeared _Betty J Eby_ ,
                              NAME(S) OF SIGNER(S)

proved to me on the basis of satisfactory evidence to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that
he she they executed the same in his her their authorized capacity(ies), and
that by his her their signature(s) on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument. I certify under
PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

> D. S. LEY
> COMM. #1575836
> Notary Public - California
> Lake County
> My Comm. Expires May 3, 2009

_____
SIGNATURE OF NOTARY

**THIS CERTIFICATE MUST BE ATTACHED TO THE DOCUMENT DESCRIBED BELOW:**

TITLE OR TYPE OF DOCUMENT _Reply-Respondent's Motion to Dismiss_
_Order Finding Respondent in Contempt_
NUMBER OF PAGES _7_          DATE OF DOCUMENT _March 26, 2008_
SIGNER(S) OTHER THAN NAMED ABOVE _____